UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| In re DOUBLE JUMP, INC. | Case No. 3:21-cv-00134-MMD |
| Debtor. | ORDER |
| CHRISTINA W. LOVATO, | Lead Case No. BK-S-19-50102-gs |
| Plaintiff, | Adversary Case No. 21-0507-gs |
| v. | |
| LBA REALTY FUND II-COMPANY I, LLC, | |
| Defendant. | |

## I.    SUMMARY

This action involves an adversary proceeding related to a bankruptcy case. Defendant LBA Realty Fund II-Company I LLC ("LBA") moves to withdraw reference of the adversary proceeding from the bankruptcy court so that this action may be heard by the district court. (ECF No. 1 ("Motion").) LBA further requests that after withdrawing the reference, this Court transfer the action to the Eastern District of California for further proceedings. (*Id.*) Plaintiff Christina Lovato, the Chapter 7 bankruptcy trustee, responded (ECF No. 11) and LBA replied (ECF No. 12.) As explained below, the Court will deny LBA's motion to withdraw reference. Accordingly, the Court finds the request to transfer is moot, as that question is properly before the bankruptcy court.

## II.    BACKGROUND

The following facts are adapted from Lovato's response brief. Between 2012 and 2018, Jeff Carpoff perpetrated a billion-dollar Ponzi scheme through Double Jump and other companies. (ECF No. 11 at 2.) The scheme offered investors the opportunity to "buy" mobile solar generators ("MSGs") in exchange for an eight- or nine-figure

1   investment. (*Id.* at 3.) Carpoff siphoned funds from the debtor companies for his personal
2   benefit. (*Id.*)

3       Following a law enforcement raid in December 2018, Double Jump and the other
4   debtor companies filed voluntary Chapter 11 petitions for bankruptcy in this District. (*Id.*)
5   In March 2019, the bankruptcy court converted the Chapter 11 petitions to Chapter 7
6   petitions and appointed Lovato as the Trustee. (*Id.*)

7       Lovato filed an adversary action ("Adversary") against LBA on January 22, 2021,
8   in the bankruptcy court. (ECF No. 1-1 at 2.) In the Adversary, Lovato asserted a fraudulent
9   conveyance claim against LBA under sections 544 and 550 of the Bankruptcy Code. (*Id.*)
10  LBA answered the complaint and moved to withdraw the reference on March 22, 2021.
11  (*Id.* at 3; ECF No. 1-2.) This action commenced in this Court the following day with LBA's
12  Motion. (ECF No. 1.) At the time LBA moved to withdraw reference of the Adversary,
13  Lovato had filed 41 distinct adversary proceedings before the bankruptcy court. (ECF No.
14  11 at 4.) Lovato contends that fraudulent conveyance is an issue in nearly all of those
15  adversaries. (*Id.*) Lovato further asserts that she contemplates bringing further
16  adversaries, as deadlines have been extended and certain claims are subject to tolling
17  agreements. (*Id.*)

18  **III.   DISCUSSION**

19      LBA argues the Court should withdraw reference of the Adversary because (1) the
20  bankruptcy court cannot finally adjudicate the fraudulent conveyance claims as a
21  constitutional matter and (2) withdrawal would serve prudential interests such as judicial
22  economy, preservation of resources, and expediency. (ECF No. 1 at 2-5.) Lovato opposes
23  the Motion, arguing that those interests are best served by waiting until the Adversary is
24  trial ready before withdrawing the reference. (ECF No. 11 at 5-8.) The Court agrees with
25  Lovato and will therefore deny the Motion.

26  **A.   Legal Standard**

27      District courts have jurisdiction over matters that arise under title 11. *See* 28 U.S.C.
28  § 1334. However, district courts "may provide that any or all cases under title 11 and any

1   or all proceedings arising under title 11 or arising in or related to a case under title 11
2   shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). A
3   bankruptcy court is authorized by statute to "hear and determine all cases under title 11
4   and all core proceedings arising under title 11, or arising in a case under title 11 . . . and
5   may enter appropriate orders and judgments" subject to appellate review by the district
6   court. 28 U.S.C. § 157(b)(1). A bankruptcy court's statutory authority to enter judgment in
7   a particular proceeding depends on whether that proceeding is a "core proceeding[ ]"
8   under 28 U.S.C. § 157(b)(1). "Put simply: If a matter is core, the statute empowers the
9   bankruptcy judge to enter final judgment on the claim, subject to appellate review by the
10  district court." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

11      "If a matter is non-core, and the parties have not consented to final adjudication by
12  the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions
13  of law. Then the district court must review the proceeding *de novo* and enter final
14  judgment." *Id.* at 34; *see also* 28 U.S.C. § 157(c). Instead, in a non-core proceeding, the
15  "bankruptcy judge shall submit proposed findings of fact and conclusions of law to the
16  district court, and any final order or judgment shall be entered by the district judge after
17  considering the bankruptcy judge's proposed findings and conclusions and after
18  reviewing de novo those matters to which any party has timely and specifically objected."
19  28 U.S.C. § 157(c)(1).

20      However, certain claims which are statutorily core may not be finally adjudicated
21  by a bankruptcy court without consent of the parties due to constitutional constraints. *See*
22  *Stern v. Marshall*, 564 U.S. 462, 502-03 (2011). In *Stern*, the Supreme Court held that
23  bankruptcy courts cannot make a final judgment on a cause of action traditionally within
24  the judicial power of an Article III court. *See id.* The Court reasoned that if a bankruptcy
25  court were to be assigned a matter traditionally within the judicial power of an Article III
26  court, this delegation would circumvent the protections provided by Article III, which
27  ensure that parties have access to an independent judiciary. *See id.*
28  ///

But a *Stern* claim—a core claim which may not be finally adjudicated by a bankruptcy court without consent—need not be heard in the first instance by a district court. *See Exec. Benefits Ins. Agency*, 573 U.S. at 36 ("The statute permits *Stern* claims to proceed as non-core within the meaning of § 157(c)."). The Ninth Circuit clarified that "*Stern* does not affect the statutory designation of matters as core" provided that the bankruptcy court does not enter final judgment. *In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1151 (9th Cir. 2016) (further rejecting the adversary defendant's argument that because he raised the right to jury trial, the bankruptcy court could not preside over the adversary until final judgment).

The district court retains discretion to "withdraw [referral], in whole or in part, any case or proceeding referred under this section . . . for cause shown." 28 U.S.C. § 157(d). When determining whether to withdraw reference, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1999).

**B.    Analysis**

LBA argues that the fraudulent conveyance claim Lovato asserts in the Adversary is statutorily core but constitutionally limited by LBA's Seventh Amendment right to a jury trial—in other words, it is a *Stern* claim.[1] (ECF No. 1 at 3.) A common-law fraudulent conveyance claim was similarly at issue in *Executive Benefits Insurance Agency v. Arkison*, where the Supreme Court found that *Stern* claims need not be heard by the district court in the first instance. *See* 573 U.S. at 35-36. Instead, the bankruptcy court may submit proposed findings of fact and conclusions of law for *de novo* review by the

---

[1]"[P]roceedings to determine, avoid, or recover fraudulent conveyances" are statutorily core proceedings. *See* 28 U.S.C. § 157(b)(2)(H). Indeed, a fraudulent conveyance claim remains statutorily core even after an adversary defendant asserts a jury trial right. *See In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1151 (9th Cir. 2016) ("*Stern* and its progeny simply recognize that sometimes the bankruptcy court's statutory authority to decide a core matter must give way when that interest conflicts with a non-creditor's constitutional right to entry of a final judgment by an Article III adjudicator.").

1    district court, as it would for non-core claims. *See id.* at 36. Indeed, Lovato admits that

2    the bankruptcy court lacks authority to enter final judgment over the fraudulent

3    conveyance claims, but argues that the Court should therefore deny the Motion and

4    instead withdraw the reference when the Adversary is trial-ready. (*Id.* at 4-5.)

5        LBA states that other judges in this District have withdrawn reference in "similar

6    scenarios" where final adjudication by the bankruptcy court would eventually be

7    impossible. (ECF No. 12 at 4-5.) But the cases LBA cites are distinguishable and

8    unpersuasive. Reference was withdrawn in *Nelson v. XL America, Inc.*, after discovery

9    had ended and dispositive motions were prepared, and the claims at issue were

10   insurance coverage claims rather than core bankruptcy issues. *See* Case No. 2:16-cv-

11   00060-JAD-GWF, 2016 U.S. Dist. LEXIS 157788 (D. Nev. Nov. 14, 2016). In other cases,

12   reference was withdrawn because claims were non-core. *See, e.g.*, *Bagley v. Beville*,

13   Case No. 2:13-cv-01119-JCM-CWH, 2013 U.S. Dist. LEXIS 100488 (D. Nev. Jul. 18,

14   2013). The difference between core and non-core claims is not merely formalistic—

15   bankruptcy judges are particularly adept at adjudicating core bankruptcy claims, and the

16   Article III court benefits from their expertise. *See In re EPD Inv. Co. LLC*, Case No. CV

17   13-05536 SJO, 2013 WL 5352953, at *6 (C.D. Cal. Sept. 24, 2013) ("Having the

18   bankruptcy court submit proposed findings of fact and conclusions of law in fraudulent

19   conveyance cases 'promotes judicial economy and efficiency by making use of the

20   bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before

21   them.'" (quoting *In reHeathcentral.com*, 504 F.3d 775, 787-88 (9th Cir. 9007)). While there

22   may ultimately be some duplication of efforts by leaving the reference in place until the

23   Adversary is ready for final adjudication, there are also considerable benefits for the fair

24   administration of the Adversary for core matters to be handled in the bankruptcy court.

25       The circumstances of this case likewise counsel leaving the Adversary referred.

26   As Lovato states—which LBA does not deny—several similar adversaries are already

27   proceeding in the same bankruptcy proceedings. (ECF Nos. 11 at 4.) The Court is

28   unpersuaded by LBA argument that other adversaries have no bearing this Adversary's

adjudication. (ECF No. 12 at 2.) Lovato argues that the adversaries she has filed relate to a Ponzi scheme, and that she seeks to avoid and recover fraudulent conveyances in almost all of the proceedings. (ECF No. 11 at 4.) The Court agrees that there may be overlapping legal and factual issues between this Adversary and other matters proceeding before the bankruptcy court. At this stage in the litigation, judicial economy favors leaving the Adversary referred.

The other factors courts consider when contemplating withdrawing a reference are either neutral or also favor referral. As explained above, the existence of related adversaries means both the uniformity of bankruptcy administration and the centralization of disputes weigh in favor of keeping the Adversary before the bankruptcy court. The Court is unpersuaded that Lovato is forum-shopping by opposing withdrawal of the reference, as the Adversary was initiated in the bankruptcy court. Lovato does not contend that LBA is forum-shopping, which the Court accepts, and finds this factor is neutral. (ECF No. 11 at 7.)

Ultimately, the Court agrees with Lovato that withdrawal of the reference is inappropriate at this stage. The Court will therefore deny the Motion without prejudice and will permit LBA to seek withdrawal when the Adversary is ready for dispositive adjudication or final judgment. Because reference will not be immediately withdrawn, the Court agrees with Lovato that the question of transfer is properly before the bankruptcy judge. The Court will therefore deny LBA's motion to transfer the Adversary to the Eastern District of California as moot.[2]

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

---

[2]*See, e.g.*, *In re The Mortg. Store*, 464 B.R. 421, 424 n.3 (D. Haw. 2011) (finding a motion to transfer moot after denying a motion to withdraw reference).

1    It is therefore ordered that Defendant's motion to withdraw reference (ECF No. 1)

2  is denied without prejudice. The Court further finds that Defendant's request for transfer

3  is moot.

4    DATED THIS 9th Day of December 2021.

5

6

7  _____
   MIRANDA M. DU
8  CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28